## PETITION OF PHILLIPS.

*Assessment—no one but owner of lands assessed can attack invalid. New York city. Publication of notices—evidence of.*

The relator, five years after an assessment upon a certain lot in New York city for flagging a street was confirmed, petitioned to have the same vacated as irregular and void. In the affidavit of the petitioner he stated " that at the time of the confirmation of the assessment he was the owner and still is held liable for the payment of the assessment imposed on lots mentioned," etc. *Held*, that it was the duty of the petitioner attacking the assessment to show that he had such an interest in the lots assessed as owner as would entitle him to institute a proceeding to free the title from cloud, and that the affidavit did not show such an interest.

The relator alleged the assessment to be invalid by reason of want of publication of the preliminary proceedings in all the newspapers employed by the corporation as required by law. *Held*, that evidence that they were not published in a newspaper which four years before they occurred was designated as one of the papers to publish corporation notices, it not appearing that the newspaper in question had consented to receive such notices, or that it was one of those employed at the time to publish them, was insufficient to establish want of proper publication.

APPEAL by the mayor, aldermen and commonalty of New York city from an order made at the special term directing that an assessment be vacated and discharged of record. The assessment in question was upon the property of Samuel Phillips, the petitioner, instituting these proceedings. Sufficient facts for a proper understanding of the case appear in the opinion.

*E. Delafield Smith*, for appellant.

*Neville & Andrews*, for respondent.

DAVIS, P. J. The assessment which the petitioner seeks to vacate was confirmed on the 27th day of January, 1869, and is upon certain lots "known and distinguished on the assessment list by ward numbers 2348, map No. 3." The petition was verified on the 4th day of February, 1874, showing that more than five years had elapsed between the confirmation and the filing of the petition to set aside the assessment. Assessments of this character are not to be presumed invalid. They are made for the purpose of charging

improvements of the public streets upon the property actually benefited thereby, and the burden ought not to be shifted from such property to the shoulders of the tax payers of the city for light or trivial reasons. The acts of making and confirming such assessments are taken for the public benefit by public officials, and are, therefore, upon principles which have become maxims of the law, to be presumed to have been rightly and properly performed till the contrary is plainly shown.

The petitioner after so long a lapse of time attacks the assessment by this summary proceeding substantially on the ground that it is a cloud upon the title of the lots affected which he has the right to have removed by an adjudication of the court. The assessment is not a personal tax upon him. It is a lien upon the lands upon which it is charged, and the first duty of the petitioner is to show that he has such an interest in the lands as owner as entitles him to institute a proceeding to free the title from the alleged cloud. This he has failed to do. In *Townsend* v. *Goelet*, 11 Abb. 187, it was held that a grantor of land who has no longer any interest cannot maintain an action to remove an apparent lien thereon as being a cloud on the title on the ground that he agreed with the grantee that he would procure the lien to be discharged. And in *Bissell* v. *Kellogg*, 60 Barb. 617, this court, sitting for the fourth department, held that an action to remove a cloud upon the title to land in which the plaintiff has no interest does not lie on the sole ground that he has warranted the title, and TALCOTT, J., in delivering the opinion of the court, says: "We have been referred to no authority and have discovered none giving countenance to the idea that a party can maintain a suit to remove a cloud upon the title to land in which he has no interest and upon the sole ground that he warranted the title, and we do not think that such an action can be maintained."

We think there can be little doubt that to maintain his proceeding the petitioner in such case must show an actual interest in the land at the time of filing his petition. Otherwise he is not the party aggrieved. He must show himself either to be the owner at the time or to bear such a relation to the land that he is directly aggrieved by the continuance of the lien, and it is not enough to show that the present owner in some future contingency will or may have recourse to him for indemnity upon the covenants of a grant or other contract. The petitioner in this case does not show

even argumentatively that he has any present interest in the lots. He testifies "that at the time of the confirmation of the above-named assessment, on the 27th day of January, 1869, he was the owner of and still is held liable for the payment of the assessment imposed on lots mentioned and described in said petition by ward-number 2348." This clearly is no assertion of any present interest in the land. On the contrary, the fair inference from his testimony is that he is not the present owner, and his statement may be entirely true, and yet the land have passed through any number of subsequent grantees to the person who is now its owner. It is true, he states that he is still held liable for the payment of the assessment, but how, and to whom, and under what circumstances he does not disclose. The statement is, at most, a mere legal conclusion of his own mind from undisclosed facts and circumstances, and by no means affords to the court any basis for the finding that his relation is such that he is the proper party to institute this proceeding. Possibly the really interested parties have no complaint to make, but are quite willing to bear a share of the expense of an improvement beneficial to their land, notwithstanding some error which would, in strictness, enable them to cast it wholly upon their fellow tax payers. We think this defect in the proof is fatal, and calls for a reversal of the order.

But the proof was entirely insufficient, for other reasons, to justify the vacation of the assessment. The principal point alleged is, that the proceedings of the common council in relation to such assessment were not published in the New York Leader. Proof was given that they were not found on full search of the files of that paper between the 11th day of March, 1867, and the 24th day of June, 1867, and a certificate was produced, signed by the mayor and comptroller, July 2, 1863, designating the New York Leader and another paper as "two additional papers in which to publish the advertisements mentioned in said act." (Laws 1863, chap. 227.)

The proof stopped here, but something more was requisite. It was not sufficient to show that a paper had been designated in 1863, because a designation was not an employment of the paper. No obligation was thereby imposed on the paper, and unless it appeared that the paper accepted the appointment, and performed the duty required by it as one of the advertising papers, nothing would follow from the mere designation. To illustrate: The New York Herald was one of the daily papers designated by those officers, but it

is said that the Herald refused to publish the proceedings and notices on the terms offered. Of course, the most diligent search would fail to find any ordinances and proceedings in relation to assessments in the columns of that paper, and hence, if mere proof of designation, followed by proof that the publications were not to be found in one of the papers designated, was sufficient to overthrow an assessment, then every assessment for several years would be defeated for lack of publication in the Herald. In addition to designation, it was essential to prove that the paper, in fact, became an advertising organ of the city, employed and by acceptance of the terms of the designation, accustomed and bound to insert the advertisements. The mere absence of the publication in the Leader in 1867 was, therefore, quite insufficient to overthrow the presumption that the publications were properly made in the papers really in the employ of the city at that time.

Besides, by the act of 1866 (Laws of 1866, chap. 876), $30,000 was appropriated for advertising for the common council, and it was provided that "no portion of the sums which shall hereafter be raised by tax and assessment, or from any other source, in the city and county of New York, shall be paid for advertising, except the same shall have been incurred for advertisements in the newspapers authorized *by the mayor, comptroller, and corporation counsel* of said city, or any two of them." Here a new board of appointment was created, who may be presumed to have done their duty, and *non constat* that the Leader was one of the papers authorized by that board. Again, by the act of April 23, 1867 (chap. 585, Laws of 1867), "the comptroller alone is directed to select three daily and three weekly newspapers, published in the city of New York, as papers wherein the proceedings of the common council, or either branch thereof, shall be published." * * * "And no proceedings of the common council, or of either board thereof, or notices of committees, shall be officially published in any other paper or papers." We are not to presume that the comptroller did not perform this duty, and, in the absence of proof, it cannot be presumed that the designation of the Leader in 1863 continued operative in 1867, notwithstanding the intervening acts and directions of the legislature.

It is not necessary to discuss the other questions that arise, nor to show that the curative act of 1872 made valid the assessment in question, because, upon the grounds already stated, the order of the

special term vacating the assessment must be reversed, with costs, and the petition and proceedings be dismissed, with costs.

*Ordered accordingly.*